O. W. SHARKEY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12543.

Criminal Court of Appeals of Oklahoma.

July 9, 1958.

Rehearing Denied Sept. 3, 1958.

Paul R. Haunstein, Enid, Okl., for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The plaintiff in error, O. W. Sharkey, hereinafter referred to as the defendant, was charged in the District Court of Garfield County with the crime of obtaining property by means of a false and bogus chcek. He was found guilty by a jury who left the punishment to the trial court. Defendant was sentenced to serve a term of one year in the state penitentiary at McAlester.

The evidence discloses that on and prior to June 22, 1956, the complaining witness, O. R. Whitman, 425 South Independence, Enid, Oklahoma, was engaged in the auto repair business in Enid. He became acquainted with the defendant, O. W. Sharkey, sometime in April, 1956, when Mr. Sharkey brought a cylinder head for an International truck to Mr. Whitman's shop for repairs. Then, again in the latter part of May, 1956, he repaired this same International truck for Mr. Sharkey. These two jobs were paid by checks, which were honored by the bank on which they were drawn.

Sometime during the early part of June, 1956, Mr. Whitman rebuilt a Chrysler Industrial engine for one of Mr. Sharkey's

combines, which job was also paid by a check that was honored.

Then, in the latter part of June, 1956, Mr. Whitman overhauled a Buick automobile for the defendant, and also did some repair work on the cylinder head of the International truck. These are the two repair jobs for which the check in question was given. The parts and labor for overhauling the Buick came to a total of $216.72; and the parts and labor on the cylinder head came to a total of $17.34; making the total sum of $234.06, the amount for which the check was given.

Mr. Whitman identified the check and said it was received at his place of business by his mechanic and employee, Mr. Unruh, in payment for repairing and overhauling the Buick automobile and for the labor and parts furnished in repairing the cylinder head of the truck. That the car and truck were delivered to Mr. Sharkey at the time the check was received. The check was introduced in evidence as State's exhibit "A".

The evidence disclosed that on June 27th, Mr. Whitman deposited the check for collection in the Security National Bank of Enid. The check went through its regular channels to the Bank of Kremlin at Kremlin, Oklahoma, and was returned on July 6th to the Security National Bank, marked "Insufficient funds."

Shortly after the check was returned, Mr. Whitman took it to the Bank of Kremlin and left it there for collection until about the first of the year 1957.

Mr. Whitman wrote Mr. Sharkey a letter demanding payment of the check, and also had several different conversations with him concerning its payment. When Mr. Whitman failed in his efforts to collect the amount due him, he turned the check over to the County Attorney for court action. This prosecution followed by the filing of a preliminary information on February 1, 1957, before the Honorable Harry H. McKeever, Judge of the City Court at Enid.

Harry G. Toews, Cashier of the Bank of Kremlin, testified in substance that defendant had been doing business at their bank since 1929. Upon being asked when the check was first presented to his bank, witness said, "Well, it indicates here that it was deposited in the Security National Bank on June 27th, 1956, it would have cleared Oklahoma City on the 28th, and been presented at our bank the 29th."

He said the check was dishonored and returned because of insufficient funds to pay it. He said Mr. Whitman brought the check to his bank on July 6th and left it there for collection; that the check was not paid, and was returned to Mr. Whitman about January 1, 1957.

Witness said that about the middle of July, 1956, after Mr. Sharkey had returned from the wheat harvest in Kansas, he gave the bank instructions not to pay the check. The witness further testified:

"And you were instructed at that time not to pay it, is that correct? A. Yes.

"Q. By Mr. Sharkey? A. That is right.

"Q. Did you get hold of Mr. Sharkey in regard to this check, or did he come in and talk to you about it? A. He did not come in to talk to me about it; he came in to tell me about his troubles that he had had, and I told him that that check was here for collection, and it would have to be taken care of. And then he went on to explain what all had taken place.

"Q. Was there any money—did he have sufficient funds in the Bank at that time to pay this check? A. No."

On cross-examination, witness testified that the check was not protested, and that no formal notice by way of protest was given to either Mr. Sharkey or to the payee of the check.

Here, the State rested its case in chief. Defendant interposed a demurrer to the evidence, which was overruled with an exception noted.

Mr. Sharkey admitted the execution and delivery of the check, and interposed as a defense that he did not receive good workmanship on the International truck and the Buick automobile, and that the work in general in his dealings with Mr. Whitman had not been satisfactory, and did not hold up. The evidence by the defendant reveals that immediately thereafter the defendant took two combines and went to Northern Kansas to work in the wheat harvest; that the truck which Mr. Whitman had repaired, threw a bearing and it was necessary to determine the size of the bearing Mr. Whitman had placed in the motor; that he called Mr. Whitman long distance about this and during the conversation nothing was said about the returned check, though a week or 10 days had passed. Defendant testified that after he returned from Kansas he had a conversation with Mr. Whitman wherein he told him that he had been rained out and had lost a lot of money, attempting to operate his combines and that it would be necessary that he attempt to secure a second mortgage on his farm to pay the check; that Mr. Whitman agreed that it would be all right with him if defendant would just take care of it in that manner. It appears there were other conversations between the parties before the check was turned over to the County Attorney for prosecution. The charging part of the information alleges in substance that the defendant, O. W. Sharkey

"* * * did then and there unlawfully, wilfully, wrongfully and feloniously, obtain merchandise of the value of $234.06 in good and lawful money of the United States of America, from O. R. Whitman, of Enid, Oklahoma, by means of a certain false and bogus check in words and figures as follows, to-wit:

"Kremlin, Okla., June 22, 1956
"The Bank of Kremlin
"Pay to O. R. Whitman $234.06
"Two Hundred Thirty four and no/100 Dollars
"/s/ O. W. Sharkey

which said check was false and bogus as he, the said defendant then and

there well knew; that said check was delivered to and accepted by O. R. Whitman on the date aforesaid, and was duly presented to The Bank of Kremlin for payment and payment was refused, and the said defendant has not paid the amount due thereon to the said O. R. Whitman and that said defendant did unlawfully, wilfully, wrongfully and feloniously and by means and use of said false and bogus check obtain merchandise of the value of $234.06 in good and lawful money of the United States of America, as aforesaid, with the unlawful and wrongful intention to cheat and defraud the said O. R. Whitman of Enid, Oklahoma."

The defendant relies upon numerous assignments of error most of which involve legal interpretation of Title 21, O.S.A. § 1541 as to notice necessary with reference to checks dishonored because of insufficient funds. The grounds for reversal are in substance as follows:

1. Error of the court in overruling defendant's demurrer to the State's evidence and motion for a directed verdict of not guilty, for the reason the statute had not been complied with relative to giving of notice and protest of the check in question, which had been dishonored by the drawee on account of "insufficient funds" of the maker to pay same.

2. Error of the Court in refusing to give defendant's requested instruction number one, over the objection and exception of defendant.

3. Error of the court in giving instructions 3, 4, and 6½ over the objections and exceptions of defendant.

4. That the county attorney made improper and prejudicial remarks in his argument to the jury.

Assignments 1, 2, 3, shall be discussed in connection with Title 21 O.S.A. § 1541, the pertinent part of which provides:

"The term 'false or bogus check' shall include checks or orders given for money or property which are not

honored on account of insufficient funds of the maker to pay same, as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository; *provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within five days from the date the same is presented for payment; and, provided, further, that said check or order is presented for payment within thirty days after same is delivered and accepted."*

It is the contention of the defendant that it is necessary under this act to protest a check in order that the maker and payee shall have notice and have five days thereafter in which to pay the same, before the check may be classified as a false and bogus check. Defendant further states in his contentions that the term "protest" as used in banking circles, means a statement, under oath, by an official of the bank, that the items presented for payment has not been paid and is protested by the officials of the bank under oath, setting forth the reason which in this case would be "insufficient funds." Counsel for defense cites no authority in support of his contentions.

■ It is to be detected by the examination of this statute that delivery of the check, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the *knowledge of insufficient funds.* When the state has made a prima facie case by proving the check was delivered and returned marked "insufficient funds" the burden was then upon defendant to refute the assumption of intent to defraud because the statute makes it clear that these prerequisites establishes the case against defendant and the only way he can take the check out of this category is to pay the drawee the amount of the check with protest fees

within five days from the date of presentment thereof for payment. The fact that there is no formal protest does not destroy the effectiveness of this statute. The law clearly states that the refused payment shall be prima facie evidence of defendant's knowledge that the funds were insufficient. The legislature intended that the defendant could take the check out of this category by paying the amount of the check and also any expenses levied by the bank in processing the return of a check marked "insufficient funds." Formal protest is not a prerequisite for prosecution under this statute, but a method by which one in good faith could remove himself from the category of the statute by paying off the check and charges made by the bank in processing the check.

■ In the instant case, the state proved the check was given the prosecuting witness for mechanical work and parts on various of defendant's vehicles; That said check was presented and payment refused within 30 days from the date of delivery of the check. The evidence showed that defendant did not have sufficient money in his account to pay the check and that said check was returned marked "insufficient." Under the statute, all the requirements to establish a prima facie case were met. The court did not err in overruling defendant's demurrer to the evidence.

■ Defendant further contends that the giving of instructions Nos. 3, 4, 6½, constituted error. A careful examination of these instructions reveals a clear statement of the law. Instructions 3 and 4 involved the interpretation of the law as it pertains to Title 21 O.S.A. § 1541, discussed heretofore under assignment of error No. 1. Instruction 6½ was as follows:

"You are further instructed that evidence has been permitted to go before you relative to previous convictions of the defendant. In this connection, you are instructed that you must not consider such evidence as being evidence of his guilt in this case, but only consider same as pertains to the credibility

of the witness, in connection with all of his testimony in this case."

This instruction was in accord with previous decisions of this court and was definitely in defendant's favor. In the opinion of this court error would have been committed had the court refused to give such an instruction. This court said in the case of Fox v. State, 321 P.2d 445:

"Where evidence of a previous conviction, unrelated to the crime with which the defendant is charged is brought out on cross examination, the jury should be instructed that such evidence can only be considered for the purpose of affecting the credibility of the witness."

Thus the contention of defendant in this regard is without merit.

 The only real problem presented in this case involves the last contention of error asserted by defendant which involves remarks made to the jury by the prosecuting attorney in his argument. The transcript reveals the following took place:

"And, during the argument of the County Attorney, counsel for the defendant made the following motion to the Court: (Said oral argument not being taken by Reporter)

"By Mr. Haunstein: (Out of hearing of jury) Comes now the defendant, and moves the Court for a mis-trial and to discharge this jury, for the reason that argument for the State is highly inflammatory, in that the argument of counsel for the State covers matters not in evidence in this case, wherein he said that this defendant was on trial here on the 26th day of April, 1956, and that he was on trial here three months prior to the writing of this check, which is not in evidence and not a part of this case, and is highly prejudicial and the argument is made for the sole purpose of prejudicing the jury against this defendant.

"By The Court: The motion is overruled.

"By Mr. Haunstein: Give us an exception.

"By The Court: Ladies and Gentlemen of the Jury, you will disregard, and pay no attention, to the remarks of the County Attorney about some trial that was supposed to have happened here a year ago, and there is no evidence here on that, Mr. Pope, so don't bring that into your argument.

"By Mr. Pope: Well, am I to understand that I can't refer to the fact that Mr. Sharkey testified that he was on trial here?

"By The Court: There wasn't any dates mentioned at all.

"By Mr. Pope: He said about a year ago, did he not?

"By The Court: Yes, but you have gone on and given a lot of dates, and the jury will disregard that, and not pay any attention to that at all."

Though the remarks of the county attorney were not recorded, it is quite obvious from the utterances of the trial judge that the county attorney had gone far afield from the evidence and harpooned the defendant with improper and prejudicial statements. This court, in cases too numerous to mention, has admonished prosecutors against becoming overzealous in an effort to obtain convictions. It is true the trial court made an effort to correct the wrong by admonishing the jury not to consider the improper remarks of the county attorney, but the damage had already been done. It is doubtful if the error was completely cured by such admonition. It is the duty of county attorneys to diligently prosecute violators of the law and they are to be commended for vigorous performance of this duty, but it must be done fairly and without passion or prejudice. It must be done with the evidence before the jury and not by improper, prejudicial evidence injected during the course of the argument and not supported by the evidence of record.

 In the instant case, no doubt can exist as to the defendant's guilt in giving

a check which was returned "Insufficient funds" for labor and parts on the repair of his vehicles. A part of said check was for a past bill which was an open account and could not be considered in the charge of receiving merchandise by means of a false and bogus check because there was no passing of the title on that portion admitted to be previously charged, at the time of giving the check. This court cannot take into consideration that full restitution has been made by the defendant. But, in view of the entire record and especially the prejudicial and improper remarks of the county attorney, we feel that justice will be better served if the sentence of the trial court was reduced from 1 year in the Oklahoma State Penitentiary to 6 months and the case otherwise affirmed and it is so ordered.

BRETT, P. J., and POWELL, J., concur.